HENRY J. CORDEN ET AL. *v.* THE ZONING BOARD OF
APPEALS OF THE CITY OF WATERBURY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued January 2—decided March 8, 1945.

*John H. Cassidy* and *A. A. Ribicoff,* with whom, on the ·brief, was *George Miske,* for the appellant (defendant The Sycamore Corporation); and also, on the brief, *Maurice T. Healey* and *Edward J. McDonald,* for the appellant (named defendant).

*William K. Lawlor,* for the appellees (plaintiffs).

MALTBIE, C. J.   The zoning board of appeals in Waterbury granted the petition of The Sycamore Corporation to permit it to use its property for business purposes for a depth of twenty-five feet beyond a line dividing a business zone from a Residence A zone which crossed the tract, so that it might construct an addition to its building, which fronted on the street; certain property owners appealed from the decision of the board to the Superior Court; it held that decision illegal and improper, sustained the appeal and vacated the order of the board; and from that decision the board and the corporation have appealed to this court.

In the Superior Court the defendants filed a plea in abatement to the appeal, the plaintiffs demurred to it and the court sustained the demurrer.   One ground stated in the plea was that the plaintiffs in their appeal did not state facts sufficient to support its allegations that the board acted illegally, arbitrarily and in abuse of the discretion vested in it; but, if the allegations were defective as claimed, a plea in abatement to the action was not the proper way to raise the question; the generality of the allegations would not render void a judgment based on them; *Taylor* v. *Lounsbury-Soule Co.,* 106 Conn. 41, 49, 137 Atl. 159; and an insufficiency of the allegations of a complaint not

amounting to such a defect as would destroy the jurisdiction of the court is not ground for abating the action. *Lovell* v. *Doble,* Quincy (Mass.) 88; *Bean* v. *Green,* 58 Mass. (4 Cush.) 279; Will's Gould on Pleading (6th Ed.), p. 434.

Another ground of the plea in abatement was that no sufficient bond was taken from the plaintiffs. Section 429 of the General Statutes, which authorizes appeals to the court from zoning boards of appeal, contains this provision: "The authority issuing the citation in such appeal shall take from the appellant, unless such appellant be an official of the municipality, a bond or recognizance to said board, with surety, to prosecute such appeal to effect and comply with the orders and decrees of the court." The defendants' contention that the demurrer admitted the defect alleged in the plea is without foundation; if the record showed that a sufficient bond had been taken, the demurrer could not be held to have admitted the contrary. *Meriden* v. *Rogers,* 111 Conn. 115, 118, 149 Atl. 406. The appeal contained only a recognizance of an individual, without any surety, that the plaintiffs would prosecute the appeal to effect and pay any costs for which judgment might be rendered against them. While it is not easy to see why, on an appeal taken by property owners, as is the one before us, such a bond as that required by § 429 is necessary, we can find no basis for reading an exception into the statute. The failure of the plaintiffs to file a bond of the character specified was sound ground for the abatement of the appeal. *Ormsbee* v. *Davis,* 16 Conn. 567, 574; *Morse* v. *Rankin,* 51 Conn. 326, 327; *Butterfield* v. *Brady,* 111 Conn. 112, 113, 149 Atl. 252. As the trial court noted in its memorandum of decision on the demurrer to the plea in abatement, it could, upon motion of the plaintiffs, have permitted the process to be

amended; General Statutes, § 5541; or, on motion of the defendants, it may well be that it could have made an order that a proper bond be filed; General Statutes, § 5620; but that either of these proceedings might have been adopted does not deprive the defendants of the right to take advantage of the defect by plea in abatement. *Means* v. *Cromwell,* 1 Ark. 247, 250. Section 5486 permits the amendment of civil process which is defective after a plea in abatement has been sustained; but this is not ground for a refusal to sustain the plea. The trial court should have overruled the demurrer to the plea in abatement and sustained the plea.

This requires that the case be remanded to the Superior Court. But as the plaintiffs may be able to file an amendment curing the defect, as the appeal has been fully argued before us upon the merits, and as the dismissal of the appeal, if the plaintiffs are not able to amend, would leave the officers of the city in a position where the judgment of the trial court as to the meaning of the ordinance would be their only guide, we have decided to give our opinion upon the main point at issue between the parties.

We summarize the facts appearing in the finding as far as necessary to our decision, with some incidental corrections to which the defendants are entitled. The Sycamore Corporation owned a lot of land at the northwest corner of East Main and Wales Streets, fronting sixty feet on the former and running back about one hundred and forty feet on the latter. This tract of land had been at all times since 1920 in a single ownership, and consequently was so owned when the zoning ordinance was first adopted in 1928. From 1920 until 1935 the only structures on the lot were a three-family dwelling house and a small single-car garage built some time prior to 1931. The land not

occupied by these buildings was an open area, used only as a back yard for the convenience of the occupants of the buildings. What use was made of the garage at this time the trial court was unable to find. In 1936, the corporation completed the construction of a building so arranged that it might be occupied by three stores. Prior to 1940, the First National Stores occupied one of them, another was used as a tavern and the third as a drug store. The building extended across the entire width of the lot as it fronted on East Main Street, and along Wales Street for a distance of about seventy-one feet. The surface of the ground back of the building was rough, uneven and ungraded. It was used by employees and patrons in passing along a walk, which ran from Wales Street across the back of the building, to go to and from the rear entrances to the stores, by trucks delivering merchandise to the stores, by the occupants of the stores to burn or dispose of rubbish, with the corporation's passive permission, and by the occupants and patrons of the stores and others to park cars; and this use extended over the entire open space in the rear of the building except for the small space occupied by the garage, which was rented to the proprietor of the tavern for his personal use.

The First National Stores desired to establish a supermarket and, with that in view, the corporation failed to renew the lease to one of the other stores. There still would not be sufficient space for the enterprise and the corporation desired to enlarge the building on the premises by erecting an addition which would extend along Wales Street fifty-three feet eight inches from the rear of the building as it then stood and would occupy the entire width of the lot to that depth. Both sides of East Main Street in this vicinity to a depth of one hundred feet are within a Business 1

zone; the line of this zone crosses the corporation's property so that for a distance of one hundred feet from the street it was in this zone, but the remainder was in a Residence A zone. The proposed addition to the building would extend into the residence zone. The corporation applied to the building inspector of the city for a permit to build it, and upon his refusal application was made to the zoning board of appeals, in part as an appeal from the decision of the building inspector and in part for a permit to extend the building for business purposes on the ground that a denial of that permission would result in practical difficulties and unnecessary hardship and to grant it would be in harmony with the general purposes and intent of the ordinance. The board sustained the appeal, granted the application and extended the use of the land for business purposes for a distance of twenty-five feet so that the lot might be used as if located in a Business 1 zone to a depth of one hundred and twenty-five feet from East Main Street.

Section 1 of the ordinance contains these definitions: A "lot" is "a parcel of land occupied by one building and the accessory buildings or uses customarily incident to it, including such open spaces as are required by this ordinance, and such open spaces as are arranged and designed to be used in connection with such building." A "corner lot" is "a parcel of land not over fifty feet in width and not over one hundred feet in depth at the junction of and fronting on two intersecting streets." "In so far as the size of a parcel located at the junction of and fronting on two intersecting streets is in excess of these dimensions, its excess area shall be treated the same as an interior lot." An "interior lot" is "a lot other than a corner lot." Section 15 (2) of the ordinance provides: "Where a zone boundary line divides a lot in a single

ownership at the time of the passage of this ordinance, [the zoning board of appeals may] permit a use authorized on either portion of such lot to extend to the entire lot, but not more than twenty-five feet beyond the boundary line of the zone in which such use is authorized." Section 15 (4) provides that the board may "Permit the erection of an additional building upon a lot occupied at the time of the passage of this ordinance by a business industrial establishment where carrying out the strict letter of the provisions would result in practical difficulties or unnecessary hardships." Section 15 (6) provides that the board may "Vary any requirement of this ordinance in harmony with its general purposes and intent, so that substantial justice may be done." "This authority shall be executed in a manner to secure the public health, safety and welfare solely in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance."

Under the definitions given in the ordinance, "lot" is the general term, and "corner lot" and "interior lot" are the two subdivisions into which all lots are divided. An examination of the ordinance makes it clear that when all "lots" are intended to be included in a particular provision the word "lots" is used, but when either of the subdivisions into which "lots" are divided is alone intended the words "corner lot" or "interior lot" are used. In Section 15 (2) the general term "lot" appears alone. It would, therefore, apply to the tract we are considering, unless the trial court is correct in its conclusion that the tract does not fully meet the provisions of the definition of a "lot" given in the ordinance. There is no question that at the time of the passage of the ordinance the tract of land was "in a single ownership." If that tract did not as a whole constitute a lot, it is because of the provisions as to

accessory uses. In considering that question, we must have in mind the purpose of these provisions.

The definitions we have quoted follow closely those in an early Milwaukee ordinance which has greatly influenced the formulation of zoning regulations throughout the country; see Williams, Law of City Planning, p. 324; and similar provisions are found in the ordinances of Chicago and Cleveland. Metzenbaum, Law of Zoning, pp. 356, 416. For our present purposes, the definition in the latter ordinance is enlightening. "A 'lot' is a parcel of land occupied or intended to be occupied by one main building and the accessory buildings and uses customarily incident to such main building and including such open spaces as are provided, or as are intended to be used in connection therewith, or as are required by this Subdivision. This may or may not coincide with a lot of a recorded subdivision." This quotation brings out the purpose served by such a definition as the one before us. It is necessary for the definite application of certain provisions to designate what is to be included within the term "lot" where, for example, there are in a single ownership adjoining tracts of land each with a house upon it, or there is upon a large tract of land a house located at one corner and the rest of the tract has no structure upon it and is not used in connection with the house. The questions which may arise in such a situation under a zoning ordinance are presented under other laws. Thus in the assessment of benefits for public improvements, it may be necessary to determine whether land in a single ownership is to be treated as one tract or several; see *Appeal of Phillips,* 113 Conn. 40, 48, 154 Atl. 238; 1 Page & Jones, Taxation by Assessment, p. 1078; 2 Nichols, Eminent Domain (2d Ed.), p. 742; the same question arises under statutes authorizing mechanics' liens; see *Wilcox* v.

*Woodruff,* 61 Conn. 578, 581, 24 Atl. 521, 1056; *Burque*
v. *Naugatuck Lumber Co.,* 113 Conn. 350, 352, 155 Atl.
414; *Lax* v. *Peterson,* 42 Minn. 214, 219, 44 N. W. 3;
36 Am. Jur. 114; and it may be presented under taxing
statutes. *Wolfort* v. *St. Louis,* 115 Mo. 139, 144, 21
S. W. 912. In such cases the uses which have been
made of the tract as a whole or of parts of it are often
an important and may be a controlling factor in deter-
mining whether the land constitutes a single lot or
several. The purpose of the provisions in the ordi-
nance as to the uses of the land accessory to the single
building which may stand upon a lot is not primarily
to fix the character of a tract of land which may be
regarded as a lot but to limit the land lying about the
building which is so appurtenant to it as to constitute
with it a single unit in use.

The conclusions of the trial court were that that
portion of the premises at the corner of East Main and
Wales Streets was a "corner lot" within the terms of
the ordinance, that the rear boundary of this lot could
only be one hundred feet from East Main Street and
that, as the line of the business zone coincided with
that rear line, subparagraph 2 of § 15 did not apply,
and there was no basis upon which the board could
reasonably find ground to vary the ordinance under
the provisions of § 15, subparagraphs 4 and 6. These
conclusions amount to this: If a tract of land which
has a frontage of sixty feet and a depth of about one
hundred and fifty feet is occupied by a single three-
family house, the fact that the land in the rear of it
is used only as a back yard for the convenience of those
occupying the house is not sufficient to meet the re-
quirement in the definition before us that the land
must be occupied by one building and "uses custom-
arily incident to it." We cannot subscribe to that
conclusion.

The tract in question was a "lot" within the definition we have quoted "at the time of the passage of this ordinance." If it be so that the words last quoted modify only the requirement of single ownership and that the question whether a tract of land constitutes a single lot may be dependent upon the uses to which it is being put at the particular time when, as in this case, some issue arises as to it under the ordinance, the uses of the land in the rear of the stores after they were built were those "customarily incident" to the occupation of the premises for such a purpose; and that the public, to some indefinite extent, also parked cars on the land cannot be controlling. There were such uses of the open space in the rear of the three-family house which stood on the tract at the time of the adoption of the ordinance, and in the rear of the stores which stood on it when the application was made to the zoning board, as were "customarily incident" to the occupancy of the buildings, and as served to make the occupancy of the whole a single unit in use. While the definition of a "lot" in the ordinance might be improved, the trial court was in error in holding that the tract in question did not constitute a "lot" within the meaning of subparagraph 2 of § 15 of the ordinance.

The zoning board of appeals, in permitting an extension of use for twenty-five feet across a zone boundary under this provision, exercises a discretion which may be reviewed, but its discretion in this regard is not so restricted by other requirements as is that which it exercises under subparagraphs 4 and 6 of this section; and circumstances which might properly lead to a decision that its action could not be sustained under the latter provisions might not lead to the same conclusion as regards the former.

There is error, the judgment is set aside and the case is remanded to be proceeded with according to law.

In this opinion the other judges concurred.