ADOLPH SCHULTZ *v.* ZONING BOARD OF APPEALS OF THE TOWN OF BERLIN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued March 5—decided March 26, 1957

*Edward B. Scott* and *J. Noxon Howard,* with whom, on the brief, was *Donald H. Clark,* for the appellant (plaintiff).

*Roger F. Gleason,* with whom, on the brief, was *Algert F. Politis,* for the appellee (defendant).

INGLIS, C. J. The question presented in this case is whether the defendant board acted illegally or arbitrarily when it denied the plaintiff's application for permission to build a dwelling house on land located on the south side of Alling Street in the town of Berlin.

When the plaintiff appealed the decision of the board to the Court of Common Pleas, the board, in

an apparent attempt to comply with the directions contained in § 379d of the 1955 Cumulative Supplement, filed in the court certain documents which purported to constitute the record of the case made before the board. This procedure was not strictly in compliance with the statute. On an appeal from a zoning board of appeals, the record made before the board should be annexed to, and incorporated by reference in, the answer of the board. When this is done, it does not become necessary to introduce the record in evidence on the trial of the case unless, of course, the plaintiff denies the correctness of the record returned. In the present case, the record filed contained, as was proper, the notice of the hearing, a rather sketchy report in narrative form of what was said at the hearing and a copy of the minutes of the executive meeting of the board at which the application was denied. There was no copy of the application itself, and this lack, as well as the incompleteness of the summary of evidence, had to be cured by the court's taking evidence, as is permitted by the statute, to determine what facts and considerations were presumptively in the minds of the members of the board when they acted. *Berkman* v. *Board of Appeals on Zoning,* 135 Conn. 393, 397, 64 A.2d 875; *Levine* v. *Zoning Board of Appeals,* 124 Conn. 53, 57, 198 A. 173. Upon the evidence so taken, the court very properly made a finding.

From the record filed by the board and the finding made by the court, with such additions as the plaintiff is entitled to, it appears that the following are the facts pertinent to the decision of the case. The zoning ordinance of the town of Berlin was adopted originally in 1948 and was revised as of July 21, 1954. Prior to the revision, the minimum requirement for frontage of a building lot in the zone in

which the property now in question is located was sixty feet. Under the revision, the minimum lot width was increased to seventy-five feet. The revised ordinance, however, contained the following provision as § 11(k): "Any plot existing as a separate parcel and not complying with the minimum area or width of lot required in the schedule at the time of the passage of these regulations may, notwithstanding such fact, be improved with a building in accordance with the regulations of its residence zone, provided the owner owns no adjacent land which may, without undue hardship to him, be included as part of the plot in question." At the time the revision went into effect, the land now belonging to the plaintiff was the eastern portion of property, having a total frontage of 132.6 feet on Alling Street, owned by Jack and Constance Glendening. The title had come to them by mesne conveyances from James B. Ellsworth, who owned it from May, 1946, to November, 1947. While Ellsworth was the owner, he built a dwelling house on the westerly portion of the lot. In that connection he graded and planted the land around the house so as to make a lot with a frontage of 68.6 feet on Alling Street. This operation left the easterly part of the original plot, sixty-four feet in front, unimproved and at a grade about four feet lower than the improved land. Ever since then this lot has been allowed to remain unimproved and in a wild state. It is this sixty-four-foot frontage that is now owned by the plaintiff. When Ellsworth sold the property, he sold the entire 132.6 feet frontage as one piece, and there was no division of ownership of the piece until April 7, 1955, when the plaintiff took conveyance of the eastern portion, and the western portion, with the dwelling house on it, was conveyed to Walter H. and Hedwig Parlow.

On March 23, 1955, before the plaintiff bought the lot with a frontage of sixty-four feet, he applied to the zoning commission of the town of Berlin, the body charged with the enforcement of the zoning ordinance, for a building permit for the erection of a dwelling on the lot. A permit signed by R. H. Allen, chairman of the commission, was given to the plaintiff, but the commission as a whole had not authorized its issuance. Thereafter, the plaintiff bought the lot and proceeded to excavate and pour concrete footings for a projected house. After receiving protests from neighbors against the erection of the house, the zoning commission first suspended, and then revoked, the permit.

On July 19, 1955, the plaintiff applied to the defendant board for relief from the revocation of his building permit, claiming that it was error for the commission to have taken that action. He also asked for a variance under the appropriate provisions of the ordinance which empowered the granting of variances "in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of these regulations." Berlin Zoning Ordinance, § 15 (6) (1954). As regards the application of the plaintiff for review of the action of the commission, his claim was that his plot with the sixty-four-foot frontage existed as a separate lot prior to the revision of the zoning ordinance in 1954 and therefore came within § 11 (k) of the ordinance, quoted above. This section, he claimed, excepted his lot from the requirement of a seventy-five-foot frontage. After due hearing, the board denied the plaintiff's application. In the minutes of the meeting at which this action was taken, the only reason given by the board was stated as follows: "This action because the present owners purchased land

after zoning change had gone in effect." The trial court found, on the strength of oral testimony before it, that the board gave as its reasons "that plaintiff failed to prove the lot was an existing one within the provisions of [§ 11(k)] of the ordinance; that plaintiff initiated his own problem with full knowledge of the facts; that the board did not want to establish any precedent as to lot-splitting; that the board felt that the original 132.6 foot parcel was one lot; and that in relieving plaintiff's hardship, the board would be creating a hardship on the next door neighbor." From the evidence, however, it appears that the sole basis for the board's finding that the sixty-four-foot frontage owned by the plaintiff was not a separate lot was the fact that it had never, in the chain of title up to the time of its conveyance to the plaintiff, been transferred as a separate lot and had never been assessed as such for taxation.

On the foregoing facts the trial court concluded that at the time of the plaintiff's application to the zoning commission for a permit, the lot in question was not a plot existing as a separate parcel but a portion of a single lot with a frontage of 132.6 feet, and that the zoning commission could reasonably have found that to be the case. Accordingly, judgment dismissing the appeal was rendered.

We will first consider the application made by the plaintiff to the defendant board on the basis of its being an appeal from the action of the zoning commission. The effect of § 11(k) of the zoning ordinance of Berlin is to vest in the owner of any lot in that town the right to erect a building thereon even though the lot does not satisfy the minimum-area and width-of-lot requirements of the revised ordinance, provided the plot existed as a separate parcel on July 21, 1954, and also provided the owner

owned no adjacent land which could be included as part of the plot in question without undue hardship. Inasmuch as by the express wording of the section the right is attached to the plot itself, it runs with the land and accrues to all owners who succeed to the title. It follows that the plaintiff was entitled as a matter of right to the issuance to him of a building permit if, as a matter of fact, his plot of land met the requirements of the section. Consequently, the only reason for the denial of the permit given by the board in the minutes of its meeting, i.e. that the plaintiff had purchased the lot after the revision of the ordinance had gone into effect, had no validity whatever. If, as found by the court, the board had the additional reason that the lot was not a separate parcel at the time the revision of the ordinance went into effect, the question arises whether the board could reasonably have concluded that the lot was not such a separate parcel as is contemplated in the ordinance.

Section 22(d) of the ordinance defines "lot" as "a parcel of land occupied by one building and the accessory buildings or uses customarily incident to it, including such open spaces as are arranged and designed to be used in connection with such buildings." This is substantially the definition we recognized in *Corden* v. *Zoning Board of Appeals,* 131 Conn. 654, 662, 41 A.2d 912. Contiguous land all owned by the same proprietor does not necessarily constitute a single lot. The land of one owner fronting on a street may well be made up of two or more lots. *Ginsberg* v. *Capone,* 91 Conn. 169, 172, 99 A. 501; *Peck* v. *Brush,* 89 Conn. 554, 556, 94 A. 981; *Wilcox* v. *Woodruff,* 61 Conn. 578, 587, 24 A. 521, 1056. Indeed, § 11(k) itself recognizes that this is so, for it contains the proviso that no pre-existing

lot shall be entitled to the exception granted by the section if the owner can take enough from an adjoining lot to make up a seventy-five-foot frontage without hardship.

It is clear, therefore, that the westerly portion of the tract formerly owned by James B. Ellsworth was by him set off as a separate lot with a frontage of 68.6 feet when he built a house on that lot and graded it, leaving his land to the east of it in its natural state and at a different grade, thus evidencing his intent not to utilize it in connection with his home to the west. This left the easterly portion of his land, that now owned by the plaintiff, as a plot of land "existing as a separate parcel," as that phrase is used in § 11(k) of the ordinance. The defendant board could not reasonably have concluded otherwise. *Grady* v. *Katz,* 124 Conn. 525, 530, 1 A.2d 137. This separate lot complied with the sixty-foot-frontage requirement of the original zoning ordinance. Without question, this lot could not have been extended to the west by the Glendenings without hardship to them since, even though they owned both lots, if they took an eleven-foot strip from their westerly lot they would thereby reduce the frontage of that lot below the minimum required in the original ordinance.

It follows that the defendant board misapplied the law in denying the plaintiff a building permit on the ground that his lot did not qualify under the provisions of § 11(k) of the ordinance, and the trial court erred in sustaining the defendant's ruling.

Since we have reached this conclusion, it is apparent that the plaintiff had no need for a variance, and we need not discuss that feature of the case. Nor need we consider his assignment of error directed at a ruling on evidence.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the appeal and directing the defendant to order the issuance of a building permit to the plaintiff for the construction of a building on his lot pursuant to the provisions of § 11(k) of the zoning ordinance if it appears that his proposed building will comply with all other requirements of law.

In this opinion the other judges concurred.