BANKERS TRUST COMPANY, EXECUTOR (ESTATE OF
HENRIKAS RABINAVICIUS) ET AL. *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF WESTON

HOUSE, C. J., COTTER, SHAPIRO, LOISELLE and MACDONALD, Js.

Argued October 11, 1973—decided January 2, 1974

*Harvey J. Rothberg,* for the appellant (defendant).

*S. Floyd Nagle,* with whom was *Frank L. Baker,* for the appellees (plaintiffs).

COTTER, J. This appeal by the defendant is taken from a judgment of the Court of Common Pleas sustaining the plaintiffs' appeal[1] from a decision of the zoning board of appeals of the town of Weston which (1) denied the plaintiffs' appeal from a prior determination by the planning and zoning commission of Weston on March 18, 1966, that it could not grant a zoning permit for the construction of a dwelling on a 1.20-acre parcel of land because, inter alia, it did not consider it to be a separate building lot and (2) denied a request, in the alternative, for a variance. The court concluded that the plaintiffs were aggrieved, that the property which is the subject of this appeal, whether it was .61 or 1.20 acres more or less, was a legal nonconforming lot and that the zoning board of appeals acted, inter alia, illegally and arbitrarily. The conclusion that the board waived its rule that an appeal must be taken within thirty days was not made a part of the court's limited finding on appeal although it so concluded in its memorandum of decision. Since the parties have briefed and argued the error assigned in that conclusion, we have decided to consider the issue as the parties have treated it. *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 517, 264 A.2d 572.

From the record filed by the board, and the limited finding made by the court, it appears that the following are the facts pertinent to a decision of the case: On September 22, 1952, the plaintiffs' decedent, Henrikas Rabinavicius, acquired title to 2.114

---

[1] The appeal from the zoning board of appeals was originally taken by the Bankers Trust Company as executor under the will of Henrikas Rabinavicius. By amendments to the complaint the parties taking this appeal were changed to the Bankers Trust Company and Edna E. Fabian as executors and trustees under the will of Henrikas Rabinavicius. The judgment, however, refers to one plaintiff.

acres of land in the town of Weston, subject to a twenty-foot easement (not relevant to the issues of this appeal) and an unimproved road or right-of-way, forty feet in width, running generally in a northerly and southerly direction, which divided the tract so that the area to the east of the road, which is the subject of this dispute, contained approximately .65 acres, and that to the west slightly more than an acre. The area of unimproved road, Beaver Brook Drive, was approximately .32 acres.[2]

At the time of the plaintiffs' decedent's purchase of the entire tract, the zoning regulations of the town of Weston provided for one-acre residential zoning[3] and did not define the meaning of "lot" or "plot." On April 10, 1953, the regulations were amended to provide for two-acre residential zoning, excluding any area in a road or right-of-way and

[2] The acreage was stipulated to by the parties subsequent to the decision of the board and prior to the judgment of the Court of Common Pleas. At the time of the application to the board, the easterly parcel was .61 acres, having been reduced by a turn-around area in the road. The turn-around area was not in existence at the time of the decedent's purchase, but was included in the deed to the town of Weston. The application to the board erroneously described the area as 1.028 acres. The hearing before the board was held and its decision rendered on the assumption that the parcel was 1.028 acres. The maps before the board, however, correctly depicted the layout of the parcel.

[3] "[Zoning Regulations, Town of Weston, 1950]. Section 5 — AREA AND LOT LINE REGULATIONS (a) No residential structure shall be erected or moved on to any plot or lot having an area of less than one acre and a frontage on a public highway or private right of way of less than 125 feet: PROVIDED, HOWEVER, that nothing herein shall prevent the construction of a residential structure on a lot existing in separate ownership at the time these regulations become effective and so recorded in the Assessor's records or the Land Records of the Town, which contains less than one acre or has a frontage of less than 125 feet on a public highway or private right of way. The term 'separate ownership' as used herein means that the owner of such a lot does not own any adjoining property."

protected lots existing in separate ownership, which meant that the owner of such lot owned no adjoining property. On September 18, 1953, after the change to two-acre zoning, the plaintiffs' decedent and others bordering on Beaver Brook Drive quitclaimed the road to the town of Weston, and on October 5, 1953, the town accepted it as a public road pursuant to the then General Statutes § 2118, Rev. 1949, presently General Statutes § 13a-48. On June 24, 1955, the zoning regulations were amended further to provide a definition for "lot" or "plot," which definition, inter alia, described a "lot" or "plot" as a parcel not divided by a river, public highway or private road or right-of-way serving or intended to serve other lots or plots.[4] Subsequent to this amendment, on July 27, 1956, the plaintiffs' decedent transferred to his wife a .93-acre parcel on the west side of Beaver Brook Road, retaining the easterly portion.[5]

An agent for the estate in January, 1966, wrote to the planning and zoning commission of Weston seeking approval to use the parcel in question as a building site, describing it as 1.20 acres. At the

---

[4] "[Zoning Regulations, Town of Weston, amended in 1955]. Section 5 — AREA AND LOT LINE REGULATIONS

.    .    .    .    .

(g): As used in these Regulations the term 'lot' or 'plot' is defined as a parcel of land not divided by a river, public highway or private road or right of way serving or intended to serve other lots or plots, which is or can be occupied by a dwelling or structure used or designed or intended to be used for human habitation and the accessory buildings and uses including a guest house used or designed or intended to be used in connection with said dwelling or structure, including such open spaces as are required by these Regulations."

[5] The decedent also retained an .18-acre parcel on the westerly side of the turn-around area, also presently owned by the estate but not the subject of this dispute.

time of the appeal to the Court of Common Pleas, the parcel was erroneously assumed to contain 1.028 acres. The building site request was denied on March 18, 1966, the commission stating that the controversial area was not a separate building lot because the decedent originally owned the entire two-acre lot, including the right-of-way. An appeal was not taken at that time from this ruling to the zoning board of appeals within thirty days as required by its regulations. On July 26, 1967, an application[6] was filed with the board asking for a variance or a decision that the parcel in question was a separate lot and, therefore, nonconforming, all of which the board denied. An appeal of that action taken to the Court of Common Pleas was later withdrawn upon stipulation by the parties when it became apparent that a member of the board should have disqualified himself. Following a second hearing, the board again unanimously denied the "request . . . for a variance and an appeal," stating, inter alia, that "decedent's tract constituted in its entirety a legal building lot" in 1953 and remained so until the transfer in 1956 of the land to the west of Beaver Brook Road to his wife. The board further found that the applicant had failed to establish the exceptional hardship or unnecessary difficulty for a variance and denied the appeal stating that the board did not read the application as an appeal, and if, in

---

[6] The form application to the board contained, among other things, the following: "State the special circumstances and conditions affecting the premises (but not affecting generally the district in which the premises are situated) owing to which it is claimed a literal enforcement of the Zoning Regulations would result in exceptional difficulty or unusual hardship or, if this is an application for a nonconforming use, why such use will not contravene or derogate from the Zoning Regulations as set forth in Sec. 837 of the General Statutes of the State of Connecticut, Revision of 1949."

the alternative, it should be so construed, it was not timely filed. The Court of Common Pleas sustained the appeal, from which the board filed a petition for certification, which was granted.

The defendant in its assignment of errors pertinent to a disposition of this appeal claims the court erred in its conclusions that the property in dispute was a legal nonconforming lot; that the plaintiffs were entitled to a building permit if their proposed building complied with all other requirements of the zoning authority; that the defendant waived its rule requiring that appeals from administrative decisions must be made within thirty days after the date on which the order or decision appealed from was rendered; and that the application to the defendant was an appeal from the decision of the commission of March 18, 1966.

The original request to the commission for permission to obtain a zoning permit for the construction of a dwelling on the "1.20 acre lot," from which the plaintiffs purported to take an appeal to the board, was denied on March 18, 1966, and it was not until July 26, 1967, a period of more than sixteen months, that the plaintiffs' application was submitted to the defendant zoning board of appeals. The applicant at the rehearing in 1969 before the board, ordered by the Court of Common Pleas in accordance with the stipulation of the parties, first presented the facts and arguments supporting an appeal and thereafter proceeded to submit its claims relative to the question of variance. The board, nevertheless, specifically in its decision stated, inter alia, that if the application "should be so construed" as an appeal in addition to a claim for a variance the appeal would have to be denied on the ground

that it was not taken to the board within the thirty days required by its rules. A review of the record before the court fails to support its conclusion that the board "may be regarded as having waived or modified" its regulation that appeals to the board must be made within thirty days of its decision since it "held hearings on the application twice." The trial court was in error in concluding that a waiver of the board's rule had been effected so that the application constituted an appeal.

The court, after deciding that the property in dispute was a legal nonconforming lot, concluded that "[n]o variance of lot size was necessary," and did not rule on the substantive question of variance. In our view, the issue of variance is vital to a determination of the case. In that connection, a determination whether the tract of 2.114 acres consisted of one or two lots is relevant and material to the ultimate decision whether the board acted illegally, arbitrarily or in abuse of its discretion in denying a variance.[7] It was on April 10, 1953, that the zoning regulations were amended to require a minimum of two acres of land for a residence, excluding any area in a right-of-way or road; and prior to that amendment, on September 22, 1952, the plaintiffs' decedent had purchased the entire tract.

The board in its decision of 1969 concluded that the decedent's original lot constituted in its entirety

---

[7] The defendant, in its brief, states the issue in the following way: "[T]he status of the plaintiffs' parcel of land at the time it was purchased by decedent, i.e., whether in its entirety it constituted one legal sized building lot or, as the trial court ruled, two lots, is pertinent to the determination of the variance question. The decision of the defendant was predicated upon the fact that 'on April 10, 1953 . . . decedent's tract constituted in its entirety a legal building lot.'"

"a legal" or "valid building lot": (1) in April, 1953, after the regulations were amended "to require 2 acres minimum for a residence"; (2) in September, 1953, after Beaver Brook Road was deeded to and accepted by the town; and (3) in 1955, after the regulations were amended when the definition of a lot was added.[8] The board specifically stated that "decedent's entire lot was still a valid building lot on the basis of vested rights as a non-conforming lot which existed prior to the amendment of June 24, 1955"; and that it lost that status when the decedent on July 27, 1956, transferred .93 acres to his wife on the west side of the road. The effect of this determination, as stated by the board, was that the condition for which a variance was requested was created by the act of the applicant's decedent and consequently the applicant failed to establish exceptional hardship or unnecessary difficulty such as to justify the granting of a variance.

The parties do not dispute the existence of the right-of-way, although there is conflict concerning its condition which was described as Beaver Brook Drive on the 1951 map and became a public road in 1953 at the time it was deeded to and accepted by the town. The deed by which the plaintiff's decedent acquired the entire parcel of 2.114 acres specifically referred to a map dated July, 1951, which was filed in the same month and year in the town clerk's office in Weston. This reference to the map in the deed, "[f]or a more particular description," incorporates it into the deed as fully and effectually as if copied therein. *Lake Garda Improvement Assn.* v. *Battistoni,* 160 Conn. 503, 510, 280 A.2d 877; *Cohen* v. *Holloways', Inc.,* 158 Conn. 395, 401, 260

[8] See footnote 4, supra.

A.2d 573; *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 508, 107 A. 3; 23 Am. Jur. 2d, Deeds, § 232. The legal effect of the right-of-way upon the tract must be considered in light of its layout as a forty-foot right-of-way described as Beaver Brook Drive on the 1951 map, which is supported by the stipulation entered into by the parties concerning the area.

When the plaintiffs' decedent purchased the property in question in 1952, the Weston zoning regulations did not define the term "lot." A subsequent amendment to the regulations in 1955 which added a definition of "lot" or "plot" defined it as a parcel of land, inter alia, not divided by a private road or right-of-way serving or intended to serve other lots or plots.[9] A general definition of a lot, as used in zoning regulations, has been recognized by the authorities to mean a parcel of land occupied or to be occupied by a principal building or group of buildings and accessory buildings including such open spaces as are required or arranged and designed to be used in connection with such buildings. 2 Yokley, Zoning Law and Practice (3d Ed.) § 17-10; 1 Rathkopf, Law of Zoning and Planning (3d Ed.), c. 34-11; Bassett, Zoning, p. 188. We have recognized substantially similar definitions. *Schultz* v. *Zoning Board of Appeals,* 144 Conn. 332, 338, 130 A.2d 789; *Corden* v. *Zoning Board of Appeals,* 131 Conn. 654, 662, 41 A.2d 912. While contiguity of land ownership is a feature of lots as defined herein; 2 Yokley, op. cit.; *Wellman* v. *Haug,* 146 Colo. 186, 190, 360 P.2d 972; contiguous land all owned by the same proprietor does not necessarily constitute a single lot. The *Schultz* case, supra, 338; *Ginsburg* v. *Capone,* 91 Conn. 169, 172, 99 A. 501.

[9] See footnote 4, supra.

The plaintiffs' decedent owned the fee throughout the entire 2.114-acre tract, including the forty-foot right-of-way which, at the time of acquisition, served his land and other properties as a principal means of access. Despite, however, the fee ownership of Beaver Brook Drive, which later became Beaver Brook Road in 1953, the plaintiffs' decedent, as a practical matter, had to keep the road open and unobstructed for the use of landowners having a common interest in the right-of-way. Under the zoning regulations in effect at the time of purchase, he had to consider the right-of-way for purposes of minimum frontage.[10] He could not place any proposed structure on the forty-foot right-of-way. The easement in question could not be considered part of the required open spaces referred to in the aforementioned definition of lot. 1 Rathkopf, op. cit.; *Clarks Lane Garden Apartments, Inc.* v. *Schloss,* 197 Md. 457, 461, 79 A.2d 538. We have recognized that zoning regulations governing setback distance from public streets may be applied equally to private easements which afford the principal means of access to the abutting property, despite the fee ownership. *Kefauver* v. *Zoning Board of Appeals,* 151 Conn. 144, 150, 195 A.2d 422. There were no setback provisions in the Weston zoning regulations at the time of purchase, but it may be noted that when the planning and zoning commission amended its regulations shortly thereafter (April 1, 1953), the regulations required structures to be set back fifty feet from the highway or private right-of-way on which the lot fronted.

The zoning board of appeals decided that both before and after the plaintiffs' decedent quitclaimed

---

[10] See footnote 3, supra.

the road to the town of Weston, the tract constituted in its entirety a legal building lot. When acquired, however, the 2.114-acre tract was divided by a forty-foot, .32-acre right-of-way within the decedent's land, which effectively served as a thoroughfare for owners of property who had a right to use it in common with the plaintiffs' decedent. A parcel so separated cannot reasonably be considered a single lot under a generally accepted definition of lot and under the circumstances of this case. At the time of purchase, the easterly .65-acre parcel, subsequently reduced to .61 acres by the turn-around, was a lot existing in separate ownership and the plaintiffs' decedent did not own adjoining property, as that phrase is used in the regulations, because the existence of the forty-foot right-of-way clearly interrupted the contiguity intended by a reasonable interpretation of the term. *Schultz* v. *Zoning Board of Appeals,* supra, 337, 338.

The trial court was in error in concluding that the defendant waived its rule that an appeal to the zoning board of appeals must be taken within thirty days. Consequently, the remaining conclusions of the court which are based upon an appeal are unsupported. It becomes unnecessary to consider any of the other claims of the defendant.

The trial court must adjudicate the issue whether the board acted illegally, arbitrarily or in abuse of its discretion in denying the plaintiffs' request for a variance.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.