[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs herein, Angelo Moscato, et ux, filed an application for use of a driveway in the land known as Wolf Swamp.
During the proceedings, Marie Moscato died and she has been replaced by Angelo Moscato as executor. Angelo Moscato is aggrieved by the Commission's action. General Statutes § 22a-43 (a);Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530.
The defendant Commission held a hearing on the application on April 14, May 12 and May 20, 1993. Thereafter, the Commission met and denied the application.
The Commission noted first that Wolf Swamp is a particularly designated wetlands and therefore must be given a careful scrutiny CT Page 5115 by the Commission. The Commission found that even if extraordinary caution were taken, erosion, turbidity, siltation, reduction of the water quality improvement capacity of the wetland, loss and disturbance of wild life, vegetation and habitat would be inevitable. Such environmental quality impacts are unacceptable intrusions upon this rich and diverse wetland habitat. The plaintiffs base their request for a permit on their wish to build an area of upland adjoining but not including the subject parcel. The Commission found that there are feasible and prudent alternatives that existed to the crossing of the wetlands as proposed. The Commission laid out in its decision several of the alternatives to the proposal. The Commission believes that the non-essential short-term advantages to the applicants from gaining access to the upland for their personal use does not justify the loss of the significant long-term benefits of water quality improvement, flood control and wild life habitat, nor the sacrifice of the maintenance of the area's long-term productivity and other wetlands. Further, the Commission found that the precious wetland habitat was of such richness and diversity as not to be suitable for the location of the roadway or other structural development. It was found that a feasible alternative to the proposed activity exists, and the Commission was required by law to deny the application.
The plaintiff presented the testimony of Russell Waldo, a civil engineer, as well as Robert S. DiSanto, President of DeLeew, Cather and Company, and Lynn Clements, an environmental scientist who has a B.A. and an M.E.S. from the Yale School of Forestry.
Mr. Waldo proposed to construct a driveway across 400 feet of wetlands to a piece of high ground approximately 7-1/2 acres in size, not on the subject parcel, on which the plaintiffs would like to build a home and raise some horses. Mr. Waldo shows the property to be located on Route #1. The access drive to the Moscato property will be approximately opposite West Lake Avenue and will cross a portion of Wolf Swamp. He pointed out that the only access to the highway was via 115 feet on the Boston Post Road. He filed a map (RR 38) which shows the path taken by the driveway, and includes two points for matters of egress from the swamp itself. The path for the driveway will come to 960 cubic yards. This is a total of .24 acres. He described the technique used as a geotextile, and presented several articles to the Commission which had been marked as exhibits. Basically, the geotextile is laid on the sub-base upon which is crushed rock or bank run gravel. Mr. Waldo thought that the use of the geotextiles CT Page 5116 was not widespread in Connecticut.[1] He stated that this is the only access that the developer has to a public highway. Mr. Waldo then described other means of access through the abutting land, but none of the land was available. He was of the opinion that the peat is impervious to running water through the peat.
The hearing was continued to May 12, 1993. Mr. Waldo continued his presentation and informed the Commission about various conversations he had had with the abutting landowners. He noted that he had with him Lynn Clements who would present the study she had made of the swamp. She described Wolf Swamp as a palustrine forested wetland. As part of her function-value assessment, she described six functions occurring at the present time at Wolf Swamp. They are (1) ground water interchange, (2) flood flow alteration, (3) sediment/toxicant retention, (4) nutrient removal/retention/transformation, (5) production export, and (6) wild life habitat. She was of the opinion that the effect of the crossing on wild life would be minimal. Further, she was of the opinion that the long-term impacts were expected to be minimal and will not significantly alter or affect the wetlands' function. She presented a compiled analysis of the wetlands entitled "Wolf Swamp Wetlands" which she filed with the Commission.
Mr. Waldo also introduced Dr. Robert DiSanto who was a chief scientist at DeLeew, Cather and Company. Dr. DiSanto was of the impression that the proposed crossing was located in an appropriate place to minimize the damage to this particular wetland.
In the course of the discussion Miss Clements commented that they did not undertake any other alternatives than the one which were presented. This was concurred in by Dr. DiSanto.
The hearing was concluded on May 20, 1993.
 I.
THERE IS SUBSTANTIAL EVIDENCE ON THE RECORD SUPPORTING THE DEFENDANT COMMISSION'S DENIAL OF THE PLAINTIFFS' APPLICATION.
The defendant Commission as noted, supra, voted to deny the plaintiffs' application at the regular meeting of June 9, 1993. "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525,539, 540. CT Page 5117
Under the substantial evidence rule, evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in question can be reasonably inferred. Huck, supra, 540, 541.
 Section 22a-42(a)(d) requires the agency, when granting a permit, to "consider the factors set forth in Section 22a-41, and such agency shall state upon the records the reason for its decision." Section 22a-41 requires the agency to consider "all relevant facts and circumstances," including but not limited to: "(1) The environmental impact of the proposed action; (2) The alternatives to the proposed action; (3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity; (4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity; (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and (6) The suitability or unsuitability of such activity to the area for which it is proposed."
 The statute does not mandate specific reference in the finding and conclusion to any one of the six factors in a "balancing test." East Haven Economic Development Commission v. D.E.P., 36 Conn. Sup. 1, 8, 409 A.2d 158
(1979).
The Commission had a walking tour of the Wolf Swamp wetland. In addition, it had the benefit of Ms. Clements' report of the Wolf Swamp wetland. It was entitled to use the materials for any purpose so long as the conduct was fair. Manor DevelopmentCorporation v. Conservation Commission, 180 Conn. 692, 697.
The Commission took into consideration the following facts and circumstances:
"The Commission . . . finds that, even if CT Page 5118 extraordinary precautions were taken, erosion, turbidity, siltation, reduction of the water quality improvement capacity of the wetland, loss and disturbance of wildlife, vegetation and habitat would be inevitable. Such environmental impacts are unacceptable intrusions upon this rich and diverse wetland habitat. The Commission also considers the threat of invasion of a nearby patch of Phragmites, an aggressive reed which rapidly colonizes disturbed areas, into the wetland cause for great concern." § 22a-41(a)1).
 "The Commission finds that feasible and prudent alternatives exist to the crossing of the wetland as proposed." § 22a-41(a)(2).
 "The Commission believes that the nonessential short-term advantages to the applicants from gaining access to additional upland for their personal use does not justify the loss of the significant long-term benefits of water quality improvement, flood control and wildlife habitat, nor the sacrifice of the maintenance of the area's long-term productivity and other wetland functions which would result from the intrusion of this wetland habitat." § 22a-41(a)(3).
 "Although the total area of disturbance is small compared to the total area of the wetland, the alteration of this swathe of Swamp would result in an irreversible and irretrievable commitment of resources which, in view of the Commission, is not justified." § 22a-41(a)(4)."
 "The Commission finds further that precious wetland habitat of such richness and diversity is not suitable for the location of a roadway or other structural development." § 22a-41(a)(6)
 "In conclusion, the above stated reasons compel the Commission to deny this application." CT Page 5119
 II.
In its written decision, the defendant Commission states its agreement with the testimony of James A. Portley, the Guilford Town Engineer. (RR 14). The memorandum is dated May 12, 1993. The decision made by the Commission was of June 9, 1993, but for some reason it was not in the record.
Looking at the memorandum, it cites the extensive "filling", "appears to be reasonably designed" with the exception of better inlet control for the drainage is 6+45. What the impact of the memo is as follows: "The impact on the wetlands is obviously significant because of the extensive earth work necessary to complete construction of the road." The Commission agreed upon the findings by the engineer and states that "even if extraordinary precaution were taken, erosion, turbidity, siltation, reduction of the water quality improvement capacity of the wetlands, loss and disturbance of wildlife, vegetation and habitat would be inevitable."
In any event, the memo falls into the category of advice to a municipal agency, consisting of laymen. "It is beyond dispute that a municipal agency, composed of laymen is entitled to technical and professional assistance regarding matters beyond its expertise."Norooz v. Inland Wetlands Agency, 26 Conn. App. 564, 569; see alsoYurdin v. Town Plan and Zoning Commission, 145 Conn. 416, 420, 421;Kyser v. Zoning Board of Appeals, 155 Conn. 236, 249-251; McCrannv. Town Plan and Zoning Commission, 161 Conn. 65, 77-78; Holt-Lock,Inc. v. Zoning and Planning Commission, 161 Conn. 182, 184-185.
"Neither the trial court nor the plaintiffs have identified any fact or evidence relied on in those letters which was not already evidence of record in the administrative proceedings."Norooz v. Inland Wetlands Agency, 26 Conn. App. 564, 574.
 III.
THE APPLICANT FAILED TO SUBMIT FEASIBLE AND PRUDENT ALTERNATIVES TO ITS PROPOSAL.
Section 22a-41(b) requires no permit may issue if a feasible and prudent alternate is found to exist.
Mr. Waldo submitted to the Commission a letter containing six CT Page 5120 alternatives to the location of the driveway. (RR-22). These alternatives considered by the application that follows: (1) Development of the hillside north of Wolf Swamp; (2) The access across the intervening property, possibly reducing the length of the crossing; (3) Access to the property from the south; (4) Construction of the roadway by excavation and replacement of the peat and muck subsoils; (5) Location of the roadway further to the west; and (6) Location of the crossing further to the east.
In its decision, the Commission found that feasible and prudent alternatives exist to the crossing of the roadway as proposed. These include (1) revising the two-family house on the property along the Boston Post Road; (2) demolition of the structure and building a single family dwelling for themselves; (3) establishment of any number of commercial ventures on the C-3 portion of the property and requiring no intrusion into the swamp.
None of these require an incursion into the wetlands on the whole property. Map RR-39 shows in the rear the crossing point between the existing cross-over on the Boston Post Road and the additional parcel which lies to the south and to the west thereof. This parcel is approximately 8.5 acres. The plaintiffs intend to construct facilities for themselves and facilities for horses. To that end, they have sought to keep the rear lot a separate lot. The plaintiffs seek to establish the lot in the R-8 district as an interior lot under § 32.2.1. The lot has the minimum requirement for frontage as required by § 31.2.2 of the zoning regulations. This is all spelled out in § 3 of the decision, wherein the decision states that the plaintiffs base their request for a permit to build this road through Wolf Swamp Road on their wish to access an area of upland on the southwestern portion of their property. The only land for which a designation is sought is the lot #19 shown on the Assessor's Map 78. The other land is excluded from this application. "Contiguous land all owned by the same proprietor does not necessarily constitute a single lot." Schultz v. ZoningBoard of Appeals, 144 Conn. 332, 338. "An owner of contiguous parcels of land may merge those parcels to form one tract if he desires to do so. An intent on the part of the owner to do so may be inferred from his conduct with respect to the land and the use which he makes of it." Molic v. Zoning Board of Appeals,18 Conn. App. 159, 164.
The owner wished to maintain separate ownership for these two lots. CT Page 5121
In its finding, the Commission found that the "feasible and prudent alternatives exist to the crossing of the wetland as proposed". In Sampieri v. Inland Wetlands Agency, 226 Conn. 579,595, the Supreme Court ruled as follows: "Thus, for a wetlands permit to issue, the local inland wetlands agency must determine that the alternative presented by the applicant is not only sound from an engineering standpoint but is also economically reasonable in light of the social benefits derived from the activity." "An alternative will be deemed to be feasible and prudent only if it meets both criteria."
"More importantly, Gagnon holds that an agency's statutorily required finding cannot be overruled simply because the agency's decision is not explicitly stated on the record. As long as a search of the record reveals the basis for the agency's decision consistent with substantial evidence standard enunciated in Huck, then the reviewing court must infer that the local wetlands agency made a finding that the applicant's alternative was a feasible and prudent alternative." Sampieri, pp. 595, 596.
What the Commission was concerned about was a trench from which they would excavate 960 cubic yards of peat and lay down the geotextile. Two points on the entire driveway would be left open for water to permeate through. The Commission would be approving a short-term non-essential advantage to the plaintiffs for their personal use. This is not in keeping with prudent inland wetlands administration. "The court found the language to be `a plain and explicit bar to the use of federal funds for construction of highways through parks — only the most unusual situations are exempted.' Citizens To Preserve Overton Park Inc. v. Volpe, [401 U.S. 402,] 411. The language gave the secretary little discretion." Manchester Environmental Coalition v. Stockton,184 Conn. 51 (1962).
The appeal is dismissed.
Robert P. Burns, Judge