[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Eileen Pollard, appeals the decision of the defendant Zoning Board of Appeals of the Town of Middlebury. The plaintiff claims that the ZBA acted improperly when it approved three variances for Lot 15 Arline Drive: (a) Lot size from 40,000 square feet to 25,000 square feet; (b) Minimum square from 150 feet to 125 feet; and (c) Minimum frontage from 150 feet to 125 feet. Ms. Pollard owns property adjacent to and within 100 feet of the subject lot and claims to be aggrieved by the decision of the defendant ZBA. The owners of the subject property are Roger F. and Eleanor J. Carroll and they are also named defendants. The Carrolls purchased the subject lot in 1956. It is adjacent to another lot which they have owned since 1951 and on which other lot sits their house. Both lots owned by the Carrolls were conforming lots when purchased but when the Middlebury Zoning Regulations were upgraded in the CT Page 7865 1970's, the zone in which the subject parcels are located was modified from a minimum size of 20,000 square feet to 40,000 square feet, together with appropriate adjustments in frontage and square.
The Carrolls previously applied for a variance for Lot 15 in 1997 and it was denied "based on the interpretation of Section 10-2 of Middlebury Zoning Regulations."[1] Nonetheless, the ZBA accepted the Carrolls application, scheduled a public hearing on January 3, 2001, continued same to February 7, 2001 and closed the hearing on March 7, 2001. At the March 7, 2001 meeting, the defendant board approved the application by a vote of five in favor, none opposed. The decision was published on April 5, 2001 and the plaintiff appealed.
The plaintiff is the owner of property located at 36 Birchwood Terrace, Middlebury which property is located on the north border of the subject parcel. This ownership provides the plaintiff with the status of a statutorily aggrieved party able to bring this appeal. See Section 8-8
(a)(1) of the statutes; see also Nick v. Planning and ZoningCommission, 6 Conn. App. 111, 112 (1986). It is the plaintiff's contention that the defendant zoning board of appeals failed to apply the appropriate standards regarding merger and nonconforming uses in considering the Carroll's application and, as a result, acted illegally, arbitrarily and in abuse of its discretion when it approved same.
Section 10.5 of the Middlebury Zoning Ordinances provides:
10.5 Non Conforming Lot
A parcel of land, which fails to meet the area, shape or frontage of any other applicable requirements of these Regulations pertaining to lots, may be used as a lot, and a building or other structure may be constructed, reconstructed, enlarged, extended, moved or structurally altered thereon, provided that the following requirements are met:
10.5.1 The use, building or other structures shall conform to all other requirements of these regulations;
10.5.2 No owner of the parcel since October 15, 1959 shall have been the owner of continguous land which in combination of such nonconforming parcel would make or would have made a parcel that conforms, or more nearly conforms, to the area, shape or frontage requirements of these regulations pertaining to lots;
10.5.3 Or if the nonconformity is due to the fact that the area has been up-zoned and the owner builds on the lot within five years of the effective date of up-zoning. CT Page 7866
10.5.4 A lot which meets all of the area, shape, frontage and other applicable requirements of these Regulations pertaining to lots on November 3, 1977, but thereafter fails to meet all of said requirements because the area has been up-zoned effective December 5, 1977, may be used as a Lot, and a building or other structure may be constructed, reconstructed, enlarged, extended, moved or structurally altered thereon. This provision is intended to supercede Subsection 10.5.3 above with respect to previously conforming Lots in the area affected by the December 5, 1977 Zone change only, and will not affect any Lot made nonconforming by a previous or future Zone change. This subparagraph shall not apply to any Lot containing less than 40,000 sq. ft. located in an area zoned R-20 on November 3, 1977, which under the provisions of Section 11, then existing would have required 40,000 sq. ft. because of the absence of sewers, but said Lot shall continue to be subject to the provisions of Subsection 10.5.3 above as they applied to said Lot on November 3, 1977.
10.5.5 A lot which meets all of the area, shape, frontage and other applicable requirements of these regulations pertaining to lots on January 3, 1991 but thereafter fails to meet all of said requirements because the area has been up-zoned effective January 20, 1991 may be used as a lot and a building or other structure may be constructed, reconstructed, enlarged, extended, moved or structurally altered thereon. In addition, any such lots which lack 200 feet frontage or 200 feet width will only be required to comply with the R-40 District side yard requirements of Section 11 as they existed on January 3, 1991; and any such lots which lack 300 feet in depth will only be required to comply with the R-40 District rear yard requirements of Section 11 as they existed on January 3, 1991. This provision shall supercede Subsection 10.5.3 above with respect to previously conforming or valid nonconforming lots in the area affected by the January 20, 1991 zone change only, and will not affect any lot made nonconforming by a previous or future zone change.
Other undisputed facts bearing upon a resolution of this case are that there are other half-acre lots with homes built upon them in the neighborhood; that the subject lot is taxed separately as a building lot; that the Carrolls had owned another nonconforming lot purchased in 1961 which was sold in 1994; that the Carrolls have a separate mortgage for the subject lot; and that except for maintaining a tool shed on the subject lot, the Carrolls have never erected a permanent structure such as a garage, swimming pool or residence. CT Page 7867
When a land use agency acts within its statutory authority, its decision will be overturned only if it has not acted fairly or if it has acted with improper motive or with invalid reasons. Petrillo v. Board ofZoning Appeals, 147 Conn. 469, 473 (1960) The appellant must prove that the agency acted illegally, arbitrarily or in abuse of its discretion.Whittaker v. Zoning Board of Appeals, 179 Conn. 650, 654 (1980)
For a variance to issue, the applicant must demonstrate that what it requests does not affect the comprehensive zoning plan and, in addition, that strict adherence to the zoning ordinance would result in exceptional difficulty or unusual hardship. Section 8-6 of our statutes provides in part:
 "And (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship . . ."
The Carrolls claimed and the defendant board found that the hardship in this matter was the up-zoning. Dan Shaban, a member of the defendant zoning board opined, "For the reasons that I just cited, I believe that the up-zoning of the property does substantiate a hardship, that the granting of a variance would not substantially alter the comprehensive zoning plan or affect the comprehensive zoning plan. And for those reasons, I would vote in favor of the appeal." Thus, the defendant board considered hardship and it cannot be said that their having found hardship was illegal, arbitrary or capricious.
The final question presented for resolution is whether or not the defendant board acted illegally, arbitrarily or capriciously when it determined that the Carroll's two adjacent lots had not merged. Robert Bean, Chairman of the defendant board, made the following comment when considering the Carroll's application: "Bob Bean. I would vote in favor of the appeal. This is a lot, as I understand it, purchase in 1956 and became non-conforming in 1977-78 when the up-zoning took place. However, I think the Carrolls made a point of trying to keep this lot separate from the other properties which they own at the time and therefore, I don't think they automatically would merge together because the intent was never there. So I vote in favor of the variance. . . ."
In Schultz v. Zoning Board of Appeals, 144 Conn. 332, 338 (1957) our CT Page 7868 Supreme Court stated, "Contiguous land all owned by the same proprietor does not necessarily constitute a single lot. The land of one owner fronting on a street may well be made up of two or more lots. . . . indeed, § 11(K) [of the zoning ordinances of the Town of Berlin] recognizes that this is so, for it contains the proviso that no pre-existing lot shall be entitled to the exception granted by the section if the owner can take enough from an adjoining lot to make up a seventy-five foot frontage without hardship."
Certainly Section 10-5.3 of the Middlebury Zoning Regulations requiring building upon a non-conforming lot within five years of the 1977 adaption of those regulations cannot control because § 8-2 of our statutes provides: "Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use." "The general rule is that contiguous land all owned by the same proprietor does not necessarily constitute a single lot. Whether merger has occurred depends on the intent of the owner, which is a factual issue based on the owner's conduct under the surrounding circumstances." Fuller, Land Use Law and practice, Section 53.6, Vol. 9A, p. 580 (1999).
This court concludes that the defendant zoning board of appeals gave due consideration to the Carroll's application as thoroughly researched, briefed and argued by Ms. Pollack's attorney and the Carrolls' lawyer. There is nothing in the record to dictate a finding by this court that the board's conclusion was reached illegally, arbitrarily or capriciously.
The appeal is dismissed.
By The Court,
 ___________________, J. SCHEINBLUM