ADIL MULLA *v.* JAMES P. MAGUIRE, JR., ET AL.
(AC 20861)

Lavery, C. J., and Mihalakos and Peters, Js.

Argued April 5—officially released September 11, 2001

*Stephen R. Griffin*, for the appellant (plaintiff).

*Marcus G. Organschi*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. The plaintiff appeals from the summary judgment rendered in favor of the defendants[1] in this action to quiet title. The plaintiff claims on appeal that the court improperly granted the defendants' motion for summary judgment on the basis of its holding that the plaintiff's right-of-way over the defendant's land had been extinguished by a 1989 quitclaim deed and, further, that the court improperly denied the plaintiff's request for an injunction to prevent the defendant from interfering with the plaintiff's use of that right-of-way. We reverse the judgment of the trial court.

The record reveals the following relevant facts, which the parties do not dispute. The parties are the owners of adjoining parcels of land in the town of Warren. The plaintiff's land (Mulla property) lies to the north and east of the defendant's land (Maguire property). The disputed right-of-way runs northeast from Melius Road, where that road passes through the Maguire property, through the eastern portion of the Maguire property to a quarry on the Mulla property.

---

[1] The original parties to this action were the plaintiff, Adil Mulla, and the defendants, James P. Maguire, Jr., and Catherine Maguire, trustees. On December 14, 2000, Catherine Maguire died. On January 4, 2001, we granted the motion to substitute James P. Maguire, Jr., trustee, as party defendant. Hereinafter, we will refer only to James P. Maguire, Jr., trustee, as the defendant.

The relevant portion of the chain of title of the Maguire property is as follows. On October 26, 1942, Richard Morgan, as executor of the estate of Emily Morgan, conveyed the Maguire property to James P. Maguire, Sr., and Huldah Johnson Maguire, the parents of the defendant, by an executor's deed that explicitly reserved to the grantor, his heirs, successors and assigns, the aforementioned right-of-way. On September 11, 1970, Huldah Johnson Maguire, by then the owner of the fee, conveyed the property to the defendant via quitclaim deed. On July 31, 1974, the defendant conveyed the property to himself and Catherine Maguire, in joint tenancy, by quitclaim deed. On August 28, 1986, the Maguires conveyed the property to themselves as trustees, to be held in trust for their children, by quitclaim deed.

The relevant portion of the chain of title of the Mulla property is as follows. On May 12, 1944, the estate of Richard Morgan conveyed the Mulla property to Robert Cashion and Edna Cashion by executor's deed, and on December 26, 1959, the Cashions conveyed the property to their corporation, Windy Ridge, Inc. (Windy Ridge), by warranty deed. On July 10, 1995, the plaintiff acquired the property from Windy Ridge by warranty deed. Each of those three deeds explicitly included a reference to the right-of-way over the Maguire property.

In 1989, while Windy Ridge still owned the Mulla property, Robert Cashion had it surveyed by Richard Adams and found that there were uncertainties regarding its exact boundaries with the various neighboring properties. Cashion obtained the defendant's agreement that the boundary lines as shown on Adams' survey map were accurate, and drafted and executed a quitclaim deed (1989 deed), whereby Windy Ridge granted to the Maguires all "right, title and interest of the Grantor, if any, to the premises lying Westerly and Southerly of the hereinafter described lines," i.e., the

border as shown on the map.[2] The 1989 deed made no attempt to describe the Maguire property in particular metes and bounds, just the boundary line. The deed specifically referenced Adams' survey map by name and date of preparation, and concluded with a clause stating that "[t]he intention of this deed is to establish the above-referenced lines as the boundary line between the Grantor's and the Grantee's property."

At approximately the same time, the Maguires also executed a quitclaim deed, granting to Windy Ridge "all the right, title, interest, claim and demand whatsoever as [they] have or ought to have in" the Mulla property

---

[2] The 1989 deed reads in relevant part as follows: "WINDY RIDGE, INC. . . . acting herein by EDNA K. CASHION, its Vice President, duly authorized for divers good causes and considerations thereunto moving, especially for consideration other than monetary consideration received to its full satisfaction of JAMES P. MAGUIRE, JR. and CATHERINE M. MAGUIRE, TRUSTEES, both of Melius Road, Warren, Connecticut have remised, released, and forever quitclaimed, and do by these Presents, for itself and its successors and assigns, justly and absolutely remise, release, and forever QUITCLAIM unto the said Releasees, JAMES P. MAGUIRE, JR. and CATHERINE M. MAGUIRE, TRUSTEES and the survivor of them, and the heirs and assigns of the survivor of them forever all such right and title as it the said WINDY RIDGE, INC. have or ought to have in or to

"ALL right, title and interest of the Grantor, if any, to the premises lying Westerly and Southerly of the hereinafter described lines, situated in the Town of Warren, County of Litchfield and State of Connecticut, which are more particularly shown on a certain map entitled 'Map Prepared for WINDY RIDGE, INC. Melius Road Warren, Connecticut Scale 1" = 200' May, 1989', certified substantially correct by Richard J. Adams, R.L.S. #9674, Kent, Connecticut, and to be filed in the office of the Town Clerk of the Town of Warren:

"A line commencing at an iron pin marking the corner of premises the Grantees and premises now or formerly of Cleve Gray, thence proceeding N 64° 48' 44" W 82.82 feet to an iron pin; thence N 05° 42' 09" W 197.83 feet to an iron pin; thence N 51° 56' 15" W 32.27 feet to an iron pin; thence N 03° 56' 35" E 241.70 feet to a point; thence N 16° 48' 11" E 219.85 feet to a point; thence N 02° 06' 03" E 256.56 feet to a drill hole; and

"A line proceeding from the above-referenced drill hole S 85° 44' 40" W 120.68 feet to a point; thence S 87° 55' 16" W 178.95 feet to an iron pin set in the easterly line of Melius Road, so-called.

"The intention of this deed is to establish the above-referenced lines as the boundary line between the Grantor's and Grantee's property."

as shown on Adams' survey map.[3] The deed did not describe the Mulla property with any more specificity. The deed also referenced the map by name and date of preparation, and noted that the "map is to be filed in the office of the Town Clerk of the Town of Warren, to which reference may be had." The two deeds were executed in July and August, 1989, respectively. When the deeds were agreed to and executed, there was no discussion between Robert Cashion and the Maguires regarding the right-of-way.

Windy Ridge arranged for similar exchanges of deeds with two other neighboring property owners so as to establish clearly other parts of the boundary line for the Mulla property. Those deeds contained the same specific boundary line descriptions, general parcel descriptions, references to the survey map, and intent to establish the boundary line clauses as did the deeds exchanged between Windy Ridge and the Maguires.

The survey map prepared by Adams and referenced by the deeds shows the disputed right-of-way where it crosses from the Mulla property to the Maguire property. In the lower left portion of the map is a "Notes" section. One of the notes reads, "Refer to Right-of-way—Volume 23 Page 119 of the Warren Land Records." That citation references the part of the 1944 deed from the Morgan estate to the Cashions, wherein the right-of-way is defined.

In 1996, the defendant observed the plaintiff on the disputed right-of-way and asked him what he was doing.

---

[3] The deed described the Mulla property only as "[a]LL THAT certain piece or parcel of land, situated in the Town of Warren, County of Litchfield and State of Connecticut, containing 230.919 Acres and being shown and designated on that certain map entitled 'Map Prepared for WINDY RIDGE, INC. Melius Road Warren, Connecticut Scale 1" = 200' May, 1989', which map is certified substantially correct as a Class A-2 survey by Richard J. Adams, R.L.S. #9674, Kent, Connecticut, and which map is to be filed in the office of the Town Clerk of the Town of Warren, to which reference may be had."

The plaintiff replied that he believed he was entitled to use the right-of-way by virtue of his deed. Subsequently, when the plaintiff attempted to use the right-of-way, he found it blocked by boulders, a telephone pole and a car.

The plaintiff commenced an action seeking damages and an injunction to prevent the defendant from interfering with the plaintiff's use of the right-of-way. The Maguires filed a counterclaim to determine the respective rights of the parties to the disputed right-of-way and to quiet title. The parties each filed motions for summary judgment, and submitted to the court copies of the relevant deeds and maps, correspondence, depositions and the plaintiff's affidavit along with their memoranda of law. The court, after hearing argument on the motions, rendered summary judgment in favor of the defendant, holding that the 1989 deed from Windy Ridge to the Maguires operated to extinguish Windy Ridge's interest in the right-of-way and, therefore, that Windy Ridge could not have conveyed the right-of-way to the plaintiff. This appeal followed. Additional facts will be provided as necessary.

The plaintiff claims that the court, in rendering summary judgment for the defendant, improperly construed the 1989 deed executed by Windy Ridge as extinguishing the right-of-way over the Maguire property. He argues that the intent of the parties in exchanging the deeds was only to establish the boundary line between their properties and that the deed should be construed so as to effectuate that intent. We agree with the plaintiff.

"Our standard of review of a court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

. . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) *Saunders* v. *Stigers*, 62 Conn. App. 138, 145, 773 A.2d 971 (2001).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the court rendered judgment for the [defendants] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . On appeal, however, the burden is on the opposing party to demonstrate that the trial court's decision to grant the movant's summary judgment motion was clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id.

"[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences." (Internal quotation marks omitted.) *Bird Peak Road Assn., Inc.* v. *Bird Peak Corp.*, 62 Conn. App. 551, 557, 771 A.2d 260, cert. denied, 256 Conn. 917, 773 A.2d 943 (2001).

"The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent

expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." (Internal quotation marks omitted.) *Cohen* v. *Hartford*, 244 Conn. 206, 214, 710 A.2d 746 (1998). "Further, [i]t is a well established principle of construction that wherever possible each part of the scrivener's phraseology should be given some import. . . . Every word, sentence and provision, if possible, is to have effect, and a construction which requires rejection of an entire clause is not to be admitted . . . ." (Internal quotation marks omitted.) *Bird Peak Road Assn., Inc.* v. *Bird Peak Corp.*, supra, 62 Conn. App. 557. In addition, "when a deed sets forth two different descriptions of the property to be conveyed, the one containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot be reconciled." (Internal quotation marks omitted.) Id., 558.

"In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the *obvious purpose* the parties had in view." (Emphasis added; internal quotation marks omitted.) *Ezikovich* v. *Linden*, 30 Conn. App. 1, 6, 618 A.2d 570, cert. denied, 225 Conn. 913, 623 A.2d 1023 (1993). "[I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Internal quotation marks omitted.) *Il Giardino, LLC* v. *Belle Haven Land Co.*, 254 Conn. 502, 511, 757 A.2d 1103 (2000).

In this case, the parties do not dispute the relevant facts, but they disagree on whether the court reached the correct legal conclusion therefrom. We, therefore,

must review the court's construction of the 1989 deed from Windy Ridge to the Maguires to discern whether that construction is legally and logically correct. The plaintiff, as Windy Ridge's successor in title, could acquire only whatever interest was held by Windy Ridge. If Windy Ridge relinquished its right-of-way over the Maguire property to the Maguires by virtue of the 1989 deed, Windy Ridge could not have conveyed the right-of-way to the plaintiff when the latter purchased his property in 1995.

The 1989 deed executed by Windy Ridge conveyed to the Maguires "ALL right, title and interest of [Windy Ridge], if any, to the premises lying Westerly and Southerly of [the boundary lines] which are more particularly shown on a certain map entitled 'Map Prepared for WINDY RIDGE, INC. Melius Road Warren, Connecticut Scale 1" = 200' May, 1989', certified substantially correct by Richard J. Adams, R.L.S. #9674, Kent, Connecticut, and to be filed in the office of the Town Clerk of the Town of Warren . . . ." No specific mention is made, however, of any relinquishment of the right-of-way. That clause standing alone could nonetheless be read to transfer the right-of-way, which lies to the west and south of the boundary line, to the Maguires, thereby extinguishing it, by virtue of the all encompassing language at the outset, i.e., "ALL right, title and interest."

The instrument further provides, however, that "[t]he intention of this deed is to establish the above-referenced lines as the boundary line between the Grantor's and Grantee's property." The plaintiff argues that this clause operates as a limitation on the broad language in the granting clause previously recited, while the defendant claims that it merely states *one* of the intentions of the deed, another, albeit unarticulated one being the transfer of the right-of-way. We agree with the plaintiff. If we were to accept the interpretation urged by the defendant, the clause would be rendered

mere surplusage, offending the rule of construction requiring us to give import to each part of the scrivener's language. That is so because the broad language of conveyance along with the specific description of the boundary line would have been sufficient to establish the boundary and, thus, there was no need to further state the intent of the deed to effect that result. In adding the intention clause, therefore, the drafter of the deed meant to establish that the instrument was executed for a limited purpose, that is, to set the boundary.[4]

Furthermore, "[a] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein. *Bankers Trust Co.* v. *Zoning Board of Appeals*, 165 Conn. 624, 631, 345 A.2d 544 (1974). [T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed as though they were expressly recited therein." (Internal quotation marks omitted.) *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 141–42, 735 A.2d 798 (1999); see also General Statutes § 7-31.[5]

_____

[4] The defendant argued, and the court agreed, that the clause did not read, "The *sole* intention of this deed is to establish the above-referenced lines as the boundary line," and opined that additional terms should not be read into the language of the deed. We note, however, that in interpreting the clause to read, "*One of the intentions* of this deed is to establish the above-referenced lines as the boundary line," the court drew just such an inference.

[5] General Statutes § 7-31 provides in relevant part: "When any person having an interest in land has caused it to be surveyed and plotted or laid out into lots and projected highways, and a map made, which map shall bear the seal of the surveyor and a certification that it is substantially correct to the degree of accuracy shown thereon, and when such projected highways have been approved by the municipal authorities empowered to approve the layout of highways, the map may be received and placed on file in the office of the clerk of the town in which such land is situated and *shall thereupon be deemed a part of the deeds referring thereto* . . . ." (Emphasis added.)

According to the rules of construction previously out-
lined, the general conveyance in the text of the deed
must yield to the specific reservation of the right-of-
way in the survey map incorporated into the deed by
explicit reference thereto. Although the map contains
little detail aside from the boundary line, the right-of-
way is conspicuously present, as is a citation to its
description in the Warren land records. The inclusion
of the right-of-way on the incorporated map, with a
reference to its description in the town records, but
lacking any indication that it was "former" or "extin-
guished" manifests an intent that the right-of-way
remain viable after the boundary line was confirmed.[6]

Because the conflict between the specific intent
clause and the map showing the right-of-way and the
general granting clause introduces some ambiguity into
the instrument, we also consider extrinsic evidence
bearing on what Windy Ridge meant to convey to the
Maguires. First, we note that the reciprocal nature of
the deed exchange between the Maguires and Windy
Ridge, by which each party essentially granted to the
other a parcel of land that the grantee already owned,
suggests the mere purpose of clarifying the boundary
between them. That is supported by a notation on the
survey map, prepared two months before the deeds,
stating, "Boundary Line Agreement Necessary with
Maguire." Second, the defendant's deposition testimony
further supports our conclusion that the intent of the
parties to the conveyance was limited. In his deposition,
the defendant explained that Cashion approached him
requesting the deed exchange to clarify the boundary.
The defendant twice stated in the deposition that there

---

[6] The defendants correctly point out that pursuant to General Statutes
§ 47-36f, a quitclaim deed conveys "all the releasor's right, title and interest
in and to the property described therein *except as otherwise limited therein
. . . .*" Here, the intention clause and the incorporated survey map provided
just such a limitation.

was no discussion at all concerning the extinguishing of the right-of-way. Last, Windy Ridge's transfer of the right-of-way to the plaintiff for consideration just six years later belies the defendant's assertion that Windy Ridge intended to convey it to the Maguires gratuitously via the 1989 deed. In sum, the obvious purpose of the 1989 deed was to set the boundary line and nothing more.

Our plenary review of the court's construction of the 1989 deed and examination of the circumstances surrounding the conveyance convinces us that the deed expresses only the intent to clarify the boundaries between the parties' property and not to transfer the right-of-way to the Maguires. The court, therefore, improperly granted the defendant's motion for summary judgment.

In support of their respective motions for summary judgment, the parties also argued for and against the propositions that the right-of-way had been extinguished by nonuse, and that the right-of-way was limited to the purpose of quarrying. The court, considering its ruling that the 1989 deed extinguished the easement, did not address either of those issues. Because the court's memorandum of decision does not include any discussion or legal conclusions regarding those matters, we cannot address them on appeal.

The judgment is reversed and the case is remanded with direction to deny the defendant's cross motion for summary judgment, to grant the plaintiff's motion for summary judgment in that the 1989 deed did not extinguish the right-of-way and for further proceedings to address the parties' remaining claims in accordance with law.

In this opinion the other judges concurred.