KENNETH A. SCHWARTZ *v.* KAREN A.
MURPHY ET AL.
(AC 22318)

Lavery, C. J., and Foti and Dranginis, Js.

Argued September 12—officially released December 24, 2002

*Karen A. Murphy,* pro se, and *Kathleen A. Murphy,* pro se, the appellants (defendants).

*J. Paul Johnson,* with whom was *John B. Gaffney,* for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendants, Karen A. Murphy and Kathleen A. Murphy, appeal from the judgment of the trial court, rendered after a trial to the court, determining that a view easement exists over a portion of their property in favor of the plaintiff, Kenneth A. Schwartz, and granting a mandatory injunction ordering the defendants to maintain that easement in accordance with the

court's specifications. The principal issues on appeal are whether the court properly (1) determined that a view easement exists over the defendants' property for the benefit of the plaintiff's property and (2) granted a mandatory injunction ordering the defendants to maintain the view easement.[1] We affirm, in part, and reverse, in part, the judgment of the trial court.

The record reveals the following facts that are relevant to the defendants' appeal. The parties are the owners of adjoining parcels of land in the Shippan Point area of Stamford. The plaintiff obtained title to his property, at 60 Saddle Rock Road, from Marsi T. Hope by a warranty deed that was recorded in the land records on August 28, 1985. The defendants obtained title to their property, at 68 Saddle Rock Road, from Charles McManus and Lynne McManus by a warranty deed that was recorded in the land records on May 14, 1999.

The defendants' deed indicates that their property is subject to, inter alia, the following restrictions: (1) "Restriction as to view obstruction and location of accessory structures affecting the southeasterly corner of the premises as shown on said map, 12226," (2) "Notations as shown on Maps numbered 10716 and 12226" and (3) "Restrictive covenants and agreements set forth in a certain agreement between Faye Dunaway and John A. Contegni, et al., dated February 2, 1981 . . . ."

On September 15, 2000, the plaintiff commenced the present action against the defendants, alleging that the defendants' property is subject to a view easement in

[1] The defendants also claim that the court improperly (1) admitted certain evidence in violation of their due process rights, (2) permitted the plaintiff to amend his complaint, (3) effected a deed reformation, (4) ignored the statute of limitations set forth in General Statutes § 52-575a and the doctrine of adverse possession, and (5) excluded certain evidence. On the basis of our review of the record, we conclude that those claims are entirely without merit.

his favor, "as shown on Map No. 12226 . . . ." He further alleged that the defendants have permitted a privet hedge and a large tree to remain in the easement area, thereby obstructing his view of Long Island Sound in violation of the view easement. As a remedy, the plaintiff sought a mandatory injunction requiring the defendants to maintain "their privet hedge trimmed to not more than six feet in height along the easement area to remove the tree existing in the easement area and to keep the easement free from blockage of any kind."

The defendants denied the plaintiff's material allegations and raised a number of special defenses, including adverse use, abandonment, unclean hands, laches and a claim that the easement is void for vagueness. The defendants also filed a counterclaim to determine the respective rights of the parties with respect to the view easement and to quiet title.

After a trial, the court issued a memorandum of decision on August 30, 2001. In its memorandum of decision, the court found that a view easement exists over the defendants' property, the plaintiff may enforce the view easement, and the defendants are violating the view easement by permitting their hedge and tree to grow to a height that impinges on the plaintiff's view of Long Island Sound. The court granted a mandatory injunction in favor of the plaintiff, ordering the defendants to maintain the view easement in accordance with the court's specifications.[2] The court also rendered judgment in favor of the plaintiff on the defendants' counterclaim. This appeal followed. Additional facts will be set forth as necessary.

[2] The injunction stated that "the defendants shall keep their hedge and any other bushes in the area of the view easement to a height of not more than six feet, and shall also keep the tree trimmed and pruned so that it is reasonably similar in shape and height to the way it existed in September of 2000, when this lawsuit began."

## I

We first consider whether the court properly determined that a view easement exists over the defendants' property for the benefit of the plaintiff's property. We conclude that it did.

In its memorandum of decision, the court concluded that "the source for the view easement in favor of the plaintiff's property as the dominant estate . . . over the defendants' property as the servient estate is the deed by which the defendants obtained title to their property, which contains certain conditions or restrictions . . . ." The court further concluded that although the plaintiff's deed did not refer to the view easement, "the plaintiff is still able to enforce this restriction or condition because both the defendants' predecessor in title, Dunaway, and the plaintiff's predecessor, [George P. Egbert and Judith B.] Egbert, signed an agreement establishing this restriction on the defendants' use of their property."[3] We agree with the court.

A servitude is created if the owner of the property to be burdened enters into a contract or makes a conveyance intended to create a servitude. See 1 Restatement (Third), Property, Servitudes § 2.1, p. 51 (2000). "[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . .

"The principles governing the construction of instruments of conveyance are well established. In construing

---

[3] The court also noted that "if the view easement is not for the benefit of the plaintiff's property, it is difficult to discern the identity of any other beneficiary."

a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed . . . and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . In addition, when a deed sets forth two different descriptions of the property to be conveyed, the one containing the less certainty must yield to that possessing the greater, if apparent conflict between the two cannot be reconciled. . . .

"In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the *obvious purpose* the parties had in view. . . . [I]f the meaning of the language contained in a deed or conveyance is not clear, the trial court is bound to consider any relevant extrinsic evidence presented by the parties for the purpose of clarifying the ambiguity." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Mulla* v. *Maguire*, 65 Conn. App. 525, 531–32, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001).

Furthermore, "[a] reference to [a] map in [a] deed, [f]or a more particular description, incorporates [the map] into the deed as fully and effectually as if copied therein. *Bankers Trust Co.* v. *Zoning Board of Appeals*, 165 Conn. 624, 631, 345 A.2d 544 (1974). [T]he identifying or explanatory features contained in maps referred to in a deed become part of the deed, and so are entitled to consideration in interpreting the deed as

though they were expressly recited therein." (Internal quotation marks omitted.) *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 141–42, 735 A.2d 798 (1999); see also General Statutes § 7-31.[4]

In the present case, the defendants' deed indicates that their property was conveyed subject to a "Restriction as to view obstruction and location of accessory structures affecting the *southeasterly* corner of the premises *as shown on said map, 12226.*" (Emphasis added.) Map no. 12226, entitled "Map Showing Adjustment of Property Lines Prepared for Spring Realty Corporation," contains the following notation: "No accessory structures or view obstructions shall be placed in this area." That notation refers to a 50 foot by 100 foot by 110 foot triangular area located in the *northeasterly* corner of "Lot No. 3," which is now the defendants' property. Map no. 12226 was recorded in the land records on June 27, 1990.

The defendants' deed also indicates that the property was conveyed subject to "Notations as shown on Maps Numbered 10716 and 12226." Map no. 10716, entitled "Map Showing Subdivision Of Property Prepared For Faye Dunaway," contains the same notation as that on map no. 12226, concerning the view easement, and it also locates the easement in the *northeasterly* corner of the defendants' property. Map no. 10716 was recorded in the land records on June 26, 1981.

---

[4] General Statutes § 7-31 provides in relevant part: "When any person having an interest in land has caused it to be surveyed and plotted or laid out into lots and projected highways, and a map made, which map shall bear the seal of the surveyor and a certification that it is substantially correct to the degree of accuracy shown thereon, and when such projected highways have been approved by the municipal authorities empowered to approve the layout of highways, the map may be received and placed on file in the office of the clerk of the town in which such land is situated and *shall thereupon be deemed a part of the deeds referring thereto . . . .*" (Emphasis added.)

There is no question that the restrictions in the defendants' deed express the intent to establish a view easement over the defendants' property. There is a discrepancy, however, between the text of the restrictive covenant in the deed and the survey maps incorporated into the deed with respect to the exact location of the easement on the defendants' property. To clarify that ambiguity, we consider the circumstances surrounding the conveyance, including any extrinsic evidence bearing on the issue. See *Mulla* v. *Maguire*, supra, 65 Conn. App. 535; see also *Castonguay* v. *Plourde*, 46 Conn. App. 251, 263, 699 A.2d 226 ("terms of a covenant . . . cannot be construed in a vacuum, but are to be understood in context"), cert. denied, 243 Conn. 931, 701 A.2d 660 (1997).

First, we note that although the text of the restrictive covenant describes the view easement as "affecting the southeasterly corner" of the defendants' property, it further states that the easement is shown on map no. 12226. According to the rules of construction previously outlined, the general description in the text of the deed must yield to the more specific description in the survey map incorporated into the deed by explicit reference thereto. See, e.g., *Mulla* v. *Maguire*, supra, 65 Conn. App. 535.

Also, although map nos. 10716 and 12226 both contain handwritten markings that indicate which direction is north, those markings are not easily discerned and, without that directional guidance, the view easement at issue appears to be located in the *southeasterly* corner of the defendants' property because of the directional orientation of the maps. The reference to "southeasterly" in the text of the deed, therefore, likely is attributable to the failure of the parties to discern the correct directional orientation of the maps. Indeed, it appears that the court also made that mistake. Accordingly, we conclude that the correct location of the view

easement on the defendants' property is depicted on map nos. 10716 and 12226, i.e., the triangular area that abuts the portion of the plaintiff's property that is adjacent to Long Island Sound.

The defendants' deed further indicates that the property was conveyed subject to "Restrictive covenants and agreements set forth in a certain agreement between Faye Dunaway and John A. Contegni, et al., dated February 2, 1981 . . . ." On June 14, 1978, the Deleo Brothers Development Corporation (Deleo Brothers) received permission from the Stamford planning board to subdivide its Saddle Rock Road property consisting of 2.94 acres into several lots. In granting that subdivision application, the planning board, inter alia, imposed a condition that a triangular area in the corner of what is presently the defendants' property be subject to a view easement. Several neighboring property owners, including the former owners of the plaintiff's property, the Egberts, appealed to the court from the planning board's decision to grant the subdivision application. In the meantime, Deleo Brothers conveyed the property at issue to Faye Dunaway.

On February 2, 1981, Dunaway and the neighboring property owners came to an agreement, resolving their differences with respect to the planned subdivision.[5] Specifically, the parties agreed that Dunaway's property would not be subdivided into more than three lots and the subdivision would be subject to certain restrictive covenants. One of those restrictive covenants states: "No dwelling, accessory structure or view obstruction shall be located in the triangular area 50' x 95' x 110' at

---

[5] The Dunaway-Contegni agreement was recorded in the land records on June 26, 1981. Thereafter, the neighboring property owners withdrew their appeal, and Dunaway's property was subdivided into three lots, which she conveyed to Spring Realty Corporation. In 1991, Spring Realty Corporation conveyed lot no. 3 to the McManuses, who, as previously noted, conveyed it to the defendants in 1999.

the *southwesterly* corner of said premises."[6] (Emphasis added.) The Dunaway-Contegni agreement further provides in relevant part: "The intent of these restrictive covenants and agreements is to protect property values. The parties hereto, their successors and assigns and heirs, shall all have the right to enforce the terms of this agreement in case of its violation by such court action that may be appropriate, including but not limited to, application for injunctive relief."

In light of the explicit reference to the Dunaway-Contegni agreement in the defendants' deed, to which the plaintiff's predecessor in title was a party, we conclude that the plaintiff is entitled to enforce the view easement. Accordingly, our plenary review of the court's construction of the defendants' deed and examination of the surrounding circumstances to the conveyance convinces us that the court properly determined that a view easement exists over a portion of the defendants' property for the benefit of the plaintiff's property as shown on map nos. 10716 and 12226.

## II

We next consider whether the court properly granted a mandatory injunction ordering the defendants to maintain the view easement. We conclude that it did not.

The following additional facts are relevant to our resolution of the defendants' claim. On the defendants' property, there is a privet hedge that runs along the

---

[6] The court found that the reference to the "southwesterly" corner in the Dunaway-Contegni agreement was "obviously a typographical error, as the map shows that the view easement area is clearly at the easterly or southeasterly corner of the defendants' property and *toward the water*." (Emphasis added.) We agree with the court that the reference to the "southwesterly" corner is a scrivener's error and that the correct location of the easement, as previously discussed, is depicted on map no. 10716. We also note that, significantly, map no. 10716 is entitled "Map Showing Subdivision Of Property Prepared For Faye Dunaway."

boundary line between the plaintiff's and the defendants' properties. The hedge has existed there for at least twenty-two years. It is about fifteen feet high for most of its length; however, along the view easement area it is about six feet high because the plaintiff has been pruning it to that height. There also is a "Siberian elm" tree growing in the view easement area. That tree has existed there for at least forty years.

In its memorandum of decision, the court found that if the hedge is permitted to grow much higher, it "will inevitably impinge on the view easement." The court also found that if the tree is permitted to grow "without any trimming, it will adversely affect . . . the plaintiff's view easement." On the basis of those findings, the court issued an injunction ordering the defendants to maintain the view easement in accordance with the court's specifications. Specifically, the court ordered the defendants to "keep their hedge, and any other bushes in the area of the view easement, to a height of not more than six feet," and to "keep the tree trimmed and pruned so that it is reasonably similar in shape and height to the way it existed in September of 2000 . . . ."

An "[i]njunction is the proper remedy to stop interference with an owner's use and enjoyment of an easement." (Internal quotation marks omitted.) *DiSorbo* v. *Grand Associates One Ltd. Partnership*, 8 Conn. App. 203, 208 n.4, 512 A.2d 940 (1986). "[T]he holder of an easement . . . is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. . . . [T]he holder [however] is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment." 1 Restatement (Third), supra, § 4.10, p. 592; see also *Gager* v. *Carlson*, 146 Conn. 288, 292–94, 150 A.2d 302 (1959).

"The law is settled that the obligation of the owner of the servient estate, as regards an easement, is not to maintain it, but to refrain from doing or suffering something to be done which results in an impairment of it." (Internal quotation marks omitted.) *Kelly* v. *Ivler*, 187 Conn. 31, 45, 450 A.2d 817 (1982); see also 1 Restatement (Third), supra, § 4.13, p. 631.[7] "The duty of maintaining an easement so that it can perform its intended function [therefore] rests on the owner of the easement absent any contrary agreement." *Powers* v. *Grenier Construction, Inc.*, 10 Conn. App. 556, 560, 524 A.2d 667 (1987); see also 1 Restatement (Third), supra, § 4.13, p. 631.

In the present case, the defendants, by the express terms of the restrictive covenant in their deed, are prohibited from *placing* accessory structures or view obstructions in the easement area. It is undisputed that the hedge and tree existed in the easement area prior to the creation of the view easement. The defendants, therefore, have not violated the terms of the restrictive covenant by allowing the hedge and tree to continue to grow in the easement area. Furthermore, the defendants' deed contains no language concerning, nor is

---

[7] 1 Restatement (Third), supra, § 4.13, p. 631, provides in relevant part: "Unless the terms of a servitude . . . provide otherwise, duties to repair and maintain the servient estate . . . are as follows:

"(1) The beneficiary of an easement . . . has a duty to the holder of the servient estate to repair and maintain the portions of the servient estate . . . that are under the beneficiary's control, to the extent necessary to

"(a) prevent unreasonable interference with the enjoyment of the servient estate, or

"(b) avoid liability of the servient-estate owner to third parties.

"(2) Except as required by § 4.9, the holder of the servient estate has no duty to the beneficiary of an easement . . . to repair or maintain the servient estate . . . ."

1 Restatement (Third), supra, § 4.9, p. 581, provides in relevant part: "Except as limited by the terms of the servitude . . . the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude."

there evidence of, any other agreement that requires the defendants to maintain the view easement for the plaintiff. Under such circumstances, the law is clear that it is the plaintiff's responsibility to maintain the view easement at his expense, and he had no right to compel the defendants to maintain it for his benefit.[8] See *Powers* v. *Grenier Construction, Inc.*, supra, 10 Conn. App. 560; *Labbadia* v. *Bailey*, 147 Conn. 82, 89, 157 A.2d 237 (1959); 1 Restatement (Third), supra, § 4.13, p. 631.

We conclude that the court improperly issued a mandatory injunction ordering the defendants to maintain the plaintiff's view easement.

The judgment is reversed insofar as it grants a mandatory injunction in favor of the plaintiff and the case is remanded with direction to dissolve the injunction and to determine the respective rights and obligations of the parties with respect to the maintenance of the view easement in accordance with this opinion. In all other respects the judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Although the plaintiff is entitled to maintain the view easement in a manner that is reasonably necessary for his enjoyment of it, he must do so without causing unreasonable harm to the existing hedge and tree. See 1 Restatement (Third), supra, § 4.10, p. 592; see also *Gager* v. *Carlson*, supra, 146 Conn. 292–94. We agree with the court that it is not necessary to remove or to excessively trim and to prune the hedge and tree for the plaintiff to conveniently enjoy the view easement. We also agree with the court's finding that if the hedge and other bushes in the view easement area are kept at a height of six feet and the tree is trimmed so that it is kept at approximately the same shape and height as it is shown in exhibits twelve and thirteen, which are photographs of the property, there is no impingement on the plaintiff's view of Long Island Sound.